Good morning, everyone. The first argued case this morning is No. 2010-1551, HOCHSTEIN v. MICROSOFT CORP. Mr. Newby. Good morning. Please, the Court. The invention here is about a device that allows two players to play video games remotely and talk at the same time. In 1990, when it was invented, it was revolutionary. Shortly before we filed this lawsuit in 2004, Microsoft said their version of it was revolutionary. We're here today because the District Court construed two claim terms in two different claims incorrectly, in our view. And the two claims are Claim 15, and the claim term there is voice-over-data means, and the other claim is Claim 39, and the issue there is the phrase electrically connected. And if the Court doesn't have a preference, I'd like to start with Claim 15 and the voice-over-data means. The question, the ultimate question for the voice-over-data means construction is whether there is an algorithm, excuse me, whether there's structure disclosed for the voice-over-data means. And in this patent... But the structure issue depends on whether or not the digital and the analog structures are equivalent or fully explored or fully described. I think that's probably not the case here, because Microsoft agrees that the filter structure, the notch filters, are fully described and are structured that support the voice-over-data means. But they argue, isn't their major argument, that it uses analog technology, which has been superseded to the point that the digital technology is not adequately disclosed by algorithm? In terms of the equivalence argument, I think that's fair. But the patent discloses... The patent is interesting because it has what it calls a block diagram of the preferred embodiment, and that's Figure 2, and then also what it calls a schematic diagram of the preferred embodiment, which is Figure 3. So it connects the two as the preferred embodiment, one at a block diagram level, one at a schematic level. When it talks about the block diagram, the block diagram has two boxes called filters, and it calls those things in the text, it calls those filter means. Even if we accept your proposition that 2 and 3 have to be read together, Figures 2 and 3 have to be read together, don't you have a problem in that you've already argued to the special master and the special master agreed with you that 2 does not sufficiently encompass the structure for the voice-over-data I don't think we did that. It gets very confusing, in part because there are, as I say, there are examples, there are three examples actually in the patent of what the structure is for the filter means, the filters in Figure 2. The one is the notch filters, the other is what they call an integrated circuit, which we really haven't talked about much because it really isn't that relevant here, and the last is the microprocessor, and that's shown in Figure 3. But we always said, and our experts have always said, that the Figure 2 structure is what defines the algorithm for the microprocessor shown in Figure 3. Didn't the court though find that you waived this argument, that Figure 2 was totally distinct from Figure 3? That's what the court found, but that isn't what the record supports. That's why we're here. And if you look, for example, from the very beginning, if you look at the argument, 2006 I believe it was, Ernie Brooks was arguing for Hochstein, and he was asked about this very question, and this is at A4746, and he says, he's got a slide, he's put a slide up on the screen, he says, we have included this slide in that in reply for someone later when they weren't so sure what WMS Gaming was going to be fatal, he's just sort of introducing and talking about WMS Gaming, he says, Figure 3, they suggest that it's the algorithm in it's the same combining and separating. The algorithm that we urge on Figure 3 covers Figure 2. So that statement, that loose statement, it's fine with me, overrides the statement that you have in your written materials that says, Figure 3 implementation stands on its own and its voiceover data structure does not include the filters of frequency, division, multiplexing shown in Figure 2? Correct, that's where it gets confusing, because what we're saying there is it's not the discrete filters, we're saying the microprocessor has an algorithm, it doesn't have filters, and it's not implementing filters. What it's implementing is the algorithm of, there's two directions to this, one is the transmitting direction, of combining two signals and then sending them out, it has nothing to do with filters. I agree it's necessary to exclude the analog filters, but what's the substitute algorithm, if you're not using the filters? The algorithm for the claim, in our view, is the combining and the separating. If you take the function of a claim, it's to send certain information out and receive certain information. That's what the function is. It doesn't tell you how to do that. The result is that the person who's talking and playing can hear the other person who's also talking and playing, that's the result. In between is how that's done, and the how that's done is by combining the voice and the data together and sending them on the same line over to the other remote system, and then on the receiving end, when it's coming back in, to separate those two, send one piece of information, the data, to the video game system, and send the voice to the speakers. That's not disclosed in the function and it's not the result. It is the how that's done. That's why for us, that is the algorithm. It isn't limited to a filter per se. It's a filtering process in the broad sense. In the broad sense that filtering is to take things apart, it is a filtering process, but it is not a filter, which is what we were saying in the quote from Judge O'Malley read. These are not filters in the microprocessor. It is a process of combining and separating that is the algorithm. So that's the difference for us. But you're arguing that the algorithm is disclosed in Figure 2 and we're supposed to impose that on Figure 3? What we're saying is that Figure 2 is a block diagram of the preferred embodiment. Figure 3 is all the circuit pieces of that same preferred embodiment. So whatever Figure 2 discloses, Figure 3 also discloses. It's just that this process is described more specifically with respect to Figure 2. When the description of Figure 3 comes, it's only about, well, you've got this capacitor and this resistor and they're hooked up this way. But it's the same exact preferred embodiment. So when you're describing Figure 2, you're also describing Figure 3, and so there's no disconnect there. Ernie Brooks said that you were treating them as equivalents, which presupposes not disclosed, but equivalent. What he also said was, if we're going to lose on this algorithm issue, our fallback argument is equivalents. So we weren't giving up equivalents, and that's at the bottom of that same A site that I read to you, A4746. He says, after he's done talking about Figure 2 and Figure 3, he says, we also have Zaitis, which was Dr. Zaitis, one of our experts, on equivalents, which is exhibit Q at the next slide, and how frequency division multiplexing and time division multiplexing are alternatives. And Professor Janicki, who was the special master at the time, asked, well, are you making an argument as to equivalents? And he says, 112 paragraph 6 equivalents, based on Figure 2. And he goes on to say that if we lose on this algorithm issue, we don't think we should, but if we do, we have an equivalence argument. And we made that argument in our brief in 2005, we made it in the expert reports that were submitted in 2005, we've always made an equivalence argument. So if we're wrong about the algorithm, the discrete notch filters are a 112 paragraph 6 structure, and we have a 112 paragraph 6 equivalence case against what Microsoft does based on those discrete structures. Now, again, the court said we waived that somehow, but we didn't. We have a very good record on that. And so it was an alternative argument, it wasn't our primary argument, but it certainly was our backup argument that we were making. So do you concede that if you don't have the disclosure under Figure 2, that standing alone, the voiceover data system under Figure 3, that there is no algorithm there? What I would say is that Figure 3, if you isolate it and read the text accompanying it, correct, there is no description of exactly how the information flows. The description of Figure 3 is all about what connects to what. There's a capacitor connected to a resistor, connected to a microprocessor, but it doesn't tell you what the information flow is. That information flow is done at the higher level, the block diagram level. So I would agree that if we're limited to Figure 3, and that's all we can do, which I don't think is right, then there isn't a disclosure specifically with respect to Figure 3. But I don't think we can be limited that way because the patent isn't limited that way. The patent discloses the embodiment, the preferred embodiment, a single embodiment. There are different examples of how that embodiment could be implemented, but it's one embodiment shown in two different figures at two different levels, a high level and a detail level. So your argument is that the entirety of the algorithm for Figure 3 is disclosed in Figure 2? Correct. Correct. And Figure 3 is just the details of how a circuit would be made to do that. But of course, there is no algorithm in a circuit, at least not at that level. But that's a problem, isn't it? I mean, Figure 3 incorporates a microprocessor chip, and yet there's no information as to how to program it. Just as if it's standalone, there's no information on how to program it for what it's supposed to do. There is, in the sense that once you understand how the overall system is supposed to operate as described in Figure 2, then, as our expert said, one of ordinary skill in the art reading that patent would know that that's an algorithm, and that could be programmed by anybody of skill in the art. So the experts found an algorithm in the patent, didn't have to make one up, didn't have to say I could figure one out, said I find the algorithm disclosed in the patent. And one of ordinary skill in the art would know how to program that algorithm. You don't have to have the programming. And one case that's interesting on this point is the Rembrandt case, the court's 2011 Rembrandt case, that says it held that where the expert said he could find an algorithm, and the court said no, the claim's indefinite, this court said that that's a question of fact that cannot be ruled against the patent owner on summary judgment. I think that's an interesting decision. I don't know whether that's going to stand, but that's what that court held, that the expert's opinion that he could find an algorithm in the specification was enough to preclude summary judgment of invalidity. But there's plenty of case law that we have that says that you have to do more than functional claiming to have an algorithm. You can't just tell us what the functions are that you expect to be performed. You have to explain how the microprocessor is going to be programmed to perform those functions. That's correct. And you're saying that that shows up in Figure 2, which is the filtering function, correct? Figure 2, if you look at Figure 2, it's got two boxes called filters. And the patent text describes those as filtering means. It uses the word means at the end of the phrase. And it says the filtering means can be a notch filter, can be this integrated circuit, or can be a microprocessor. Those are all the filters that are disclosed in Figure 2, all three of those. And so any one of them, they're interchangeable. But once you understand how Figure 2 operates, and this is what the experts say, once I understand how Figure 2 operates, I know the algorithm. I know the algorithm that needs to be programmed into the microprocessor, and one of ordinary skill in the art can do that. How does your argument square with this court's ruling in the risk-prep technologies where we found in a similar type instance, and we said the question is not whether the algorithm was disclosed with particular specificity, but whether it was disclosed at all. Correct. Here it is disclosed. There is no question there is an algorithm disclosed. In fact, Microsoft's brief, if you look at their red brief, pages 6, 7, 8, I think they are, they walk through the algorithm. They show with colored diagrams of Figure 2 and how the flow works. That's the algorithm. It's disclosed. The only question here is whether somebody of ordinary skill in the art would recognize that as the algorithm. But didn't your own experts say that there were at least two possible ways to program this microprocessor? And given that there's two possible ways, doesn't that hurt you in the sense that one or the other isn't disclosed in the patent? They don't disclose the two ways. These are just things that he would contemplate, correct? No, I don't think so. I don't think so because the programming step is a matter of routine work for somebody skilled in the art. If you're a programmer, there are lots of different ways you can program the microprocessor to perform the algorithm. And what that was about was the fact that… But we've clearly said that that's not enough, that someone out there would understand how to do a programming step. Correct. Our law is very clear now on that, right? I agree. I agree. But there's several steps in this process as I understand it. The first is you have to understand the function of the claim. You look at the claim, you read the function. The next is you have to try to find corresponding structure that goes with that. And the structure for a microprocessor includes the algorithm. The next step is once you find the algorithm, can somebody actually program it to do the steps of the algorithm? And I think what you're asking about is can somebody actually program it to do the steps of the algorithm once the algorithm has been found? That's what I'm saying at least. The algorithm has been found and the expert was simply saying, I know several ways of programming a microprocessor to do that specific algorithm. He wasn't saying there are more than one algorithm. He was saying there's one algorithm but many ways to implement the algorithm in a microprocessor. Let's hear from the other side. We'll save your rebuttal time. Thank you. Thank you, Your Honor. The problem with plaintiff's argument about the microprocessor, there are several problems with it. The first one is waiver. The patent mentions the microprocessor exactly twice. There's the box in Figure 3 that's tagged microprocessor. And then there's some language in Column 8 which, as Mr. Lurie explained, talks about how the microprocessor is connected to other components but not how it operates. Now in the face of that, plaintiffs originally proposed an algorithm back when Microsoft first moved for summary judgment. And the algorithm was combining and transmitting the player voice and game data signals outbound direction and receiving and separating the signals inbound direction. Now they based that algorithm not on Figure 2 or anything else in the patent but on the declaration of their expert, Dr. Jameen, who in his declaration basically identified the claimed function and said anybody of ordinary skill in the art would know how to program a microprocessor to do this. Now the special master at the time agreed with that approach. He acknowledged that the specification didn't explain how the microprocessor handled the voice and the data signals. But he concluded that the function was clear. And so he came up with his own algorithm, basically a variation of Professor Jameen's algorithm. And he said it was combining in some manner signals representing voice and signals representing game commands, transmitting both over a communication channel and separating them out in some manner at the other end. Now he acknowledged that this meant that the claim covered, in his words, any hardware or software arrangement that preserves the identity and content of both voice and commands. That's at 5814 of the appendix. But because he believed that one of ordinary skill could devise a program to do that, he thought the patent's disclosure was sufficient. And you're saying this argument constituted a waiver? Not yet. I'm getting to that, Your Honor. Now here's the waiver part. Plaintiffs didn't object to any of that. The district court adopted those findings. And so that's where we were prior to the decision in Aristocrat. Yeah, that was before Aristocrat. Exactly. In fairness. Sure, sure. They didn't know they would have to argue. Exactly. Alternatively. And I will address that. But before I do, I would also like to add that back then Microsoft itself argued that figure two should, if it's relevant at all to the microprocessor, it should be defining the structure of the microprocessor. Plaintiffs vigorously argued against that. And the reason they did is because the filters arrangement, as everybody acknowledges, is a frequency division multiplexing arrangement. And it's also agreed that Microsoft's arrangement, the way the microprocessor functions, however it functions, it is not frequency division multiplexing. So plaintiffs not only disagreed with Microsoft but vehemently took the other position precisely because they wanted to avoid having summary judgment entered against them at that stage for that reason. But that's their 112.6 argument, is it not? Well, you mean that it's equivalent to the filters or to the microprocessor? That the filters that that which, to answer your question. Yes, you do. You're right. And I apologize for that. As I see their argument, it's that there is full undisputed disclosure as to the use of the filters and as to the analog system that prevailed at the time. And that the only question is that when the digital technology appeared and became perfected through the use of microprocessors, it wasn't that they didn't foresee that that would happen. They mentioned microprocessors. And that whether the microprocessor then can be programmed to perform the same function that the filters had performed is under 112.6 an equivalent. Well, that's their argument today. Here we are today. And here we are today, but that was not their argument before. And that's where the waiver problem comes. Let's assume that we don't have a waiver, and let's just listen to the arguments. Okay. So the argument today is that the microprocessor that Microsoft uses could be found to be equivalent to the analog filters arrangement. That's the argument you'd like me to address, Your Honor? Yes, I would indeed, because we see so many cases which originated when the technology was analog. And when it becomes, I'll say, converted, or as the microprocessors take over, there really hasn't been very much dispute in terms of the function. There may be, in practice, a different algorithm for a microprocessor than for an analog filter. But the overall steps aren't so different. This isn't a case of no algorithm and no method at all. It's an aristocratic. Here we have a very strong disclosure of what you tell us is archaic technology. We do have a disclosure of archaic technology. We do not have a disclosure of an algorithm for programming a microprocessor. But let me address the question that I believe Your Honor started with. Assuming that plaintiffs now are arguing that the microprocessor that Microsoft uses can be equivalent to the figure 2, the analog filter structure, summary judgment was still properly entered, and here's why. The special master found, and this is at paragraph 25 of his ruling, which is quoted in the district court's decision at appendix page 75, that the plaintiffs presented that there was no evidence that Xbox uses the filter structure or is equivalent to it. At paragraph 26, also quoted in the district court's decision, the special master said that there's not enough evidence to determine if one of ordinary skill would find an algorithm or conclude that the Xbox isn't equivalent. Which is a question of fact for the jury. Not in this procedural context. Here's the situation. Microsoft moved for summary judgment of non-infringement. Under Celatex, that put the burden on plaintiffs to come forward with, in an infringement context, a claim construction that would cover the accused product and evidence on which a reasonable jury could base a finding of infringement under that claim construction. What the special master held, and plaintiffs didn't object to those findings, is that there was not sufficient disclosure of an algorithm and that there was no evidence on which a jury could make a determination on equivalence. Given the procedural posture where the plaintiff has the burden of proof of infringement, that was sufficient, and the district court said it at A79 through 81, that that was sufficient for summary judgment against plaintiffs on the issue of infringement. So even if you get past all of this algorithm stuff and whether it was waived or wasn't waived, they failed to make their case, as the district court held. But now as a review in court, shouldn't we look at the whole patent, I mean, figure 2 and figure 3, in order to see whether anything in figure 2 teaches about how to program the processor in figure 3? Your Honor, I believe that... as to an algorithm that's usable for figure 3. I don't think so, and here's why. Well, first of all, we still have the waiver problem, which is that... Putting the waiver problem... Putting the waiver problem to one side, the figure 2 algorithm, first of all, there's nothing in the patent that suggests that one wanting to know how to program... But somebody skilled in the art, couldn't they look at figure 3 and say, okay, now I have here a digital apparatus, and I look at figure 2, and figure 2 teaches me how to program the computer, because figure 2 takes me through all the steps as to how this is going to function and what's necessary in order to get the voiceover data means. The... There's no evidence of that. At least there's no properly submitted evidence of that. The plaintiffs didn't come up with this, their, I think, fourth and final algorithm, until after the special master had ruled, and after the district court was considering Microsoft's objection to that ruling. It was only at the very end that they even came up with this algorithm, which was in their 2008 expert report, which again was submitted after the fact. But even putting that to one side, if you look at that algorithm, it's really nothing more than a restatement of the function that the microprocessor is supposed to perform. In his original ruling, the special master explained that mixing and separating signals are functions performed by the microprocessor. That's at appendix 5807, paragraph 17. They're not ways of performing the functions. Separating or filtering the signals, the special master also said, is a function, and it's also separating the signals is stated as a function in claim 16, which has a similar means plus function limitation. And the other terms in their last algorithm, sending and communicating, are merely alternative terms for transmitting, which is part of the function of claim 15. And the final step in that algorithm, combining the signals so they don't, they do not interfere with one another, they admit in their brief at page 37, is the end result of the operation of the voice over data means. It's not how it accomplishes that result. There is nothing in figure 2 or any other disclosure in the patent or in their expert's explanation, either the timely one or the untimely one, that discloses or says anything about the internal structure of the microprocessor, which this court said in Katz is really what the algorithm is all about. So is it, are you arguing that there's no evidence in the record that a person skilled in the art could have implemented a software program that was based on the filter's embodiment? Yes, I am, Your Honor. No timely evidence, certainly, in the record. They do have the two. There is evidence, but you're arguing. Well, no. Let me answer it two ways. Up until their 2008 expert report, which was untimely, there was nothing. The 2008 expert report, we believe, is insufficient for the reasons that I just explained, which is that the algorithm that expert report comes up with is merely a restatement of function, which is not sufficient under aristocrat or WMS gaming or the other cases. It is not, so the answer to your question is no as to timeliness and no even as to the untimely one. We don't believe that there is a sufficient disclosed algorithm, either in the patent or in the supposed knowledge of one of ordinary skill in the art. You say sufficient for the frequency division multiplexing or for the digital system? For the digital system. There is a sufficient structure for validity purposes, for indefiniteness purposes, and that is the filter structure. So that's why there's no contention that this claim is invalid and is indefinite. There is a structure, but that structure isn't what we do. As a district court found, plaintiffs waived any argument that we do either literally the figure 2 filters embodiment or do it by way of equivalence. And incidentally, that passage that Mr. Lurie read you from Mr. Brooks' argument, not only is it inconsistent with the written statements, but if you go another page or so, he then says, oh, you know what, I don't think this is actually figure 2 equivalence. So he backtracked from what originally appeared to be his equivalence argument. But the papers are quite clear on this. Can we shift to the other claim that's at issue here? Yes. And speaking of untimeliness, how do you explain the fact that Microsoft appeared to just fall into this claim construction on electrically connected? Well, I don't think Microsoft fell into this. In fact, as the district court found, Microsoft consistently maintained that electrically connected requires a connection in which electric current flows between two components. Now, the plaintiffs argued that somehow we conceded that transformers provide that kind of a connection, but that's not the case at all. Putting to one side whether the litigation position somebody takes 15 years after the fact is even relevant to claim construction. And I note, Your Honor, that their argument is not that Microsoft waived a claim construction argument or waived a non-infringement argument. It's somehow that Microsoft's positions or failure to take positions, supposed failure to take positions, somehow informs the claim construction. And there's no support for that proposition at all. Well, but it's, I mean, I was a little troubled by the district court saying that that's somehow inadmissible for consideration, but it certainly goes to the credibility of your experts who later in the day decides that this is an issue and later in the day says that it wouldn't be understood by one of skill in the art. If that was the case, why didn't you say it a lot sooner? Well, there was no reason to, and here's why. First of all, Microsoft from the outset denied that claim 39, I'm sorry, that it, and here I can read it to you, denied that the Xbox had, quote, a modem circuit connected to the first microprocessor in the manner required by claim 39. In other words, electrically connected. That's at 11-532 of the joint appendix. Now, what plaintiff's experts said, and in fact this is in the part of the declaration that both the district court and special master quotes, plaintiff's experts said that a connection that uses transformers does not transmit current, but rather converts an electrical signal on one circuit into an electromagnetic signal, which then generates a current on another circuit. So, and as the special master noted, that description is inconsistent with what Microsoft had said an electrically connected, electrical connection was, so once their experts said that, there was no reason for our expert to say anything else. They had, from our perspective, given away that issue. It was only later, when they were backing and filling after the special master and district court ruled, that they started, they came up with this argument, oh, you were too late and all of that. But there's, it's, I think the claim construction issue on that is clear, as the special master and district court found, the patent only uses electrically connected to describe, you know, connections using an electrical conductor, a wire or a line, never uses it to describe a connection that has an inductive element like a transformer, and under Bell Atlantic and other cases of this court, the intrinsic evidence is crystal clear on what that term means. But do you concede that the district court was just wrong when he said that it's, that it's reversible error to consider extrinsic evidence unless you find the intrinsic evidence to be ambiguous? You know, I don't, I think if that's what he, what he meant literally, that's probably wrong. That's what he said. In fairness, I think what he meant was, where the intrinsic evidence is clear, it would be error to consider extrinsic evidence that it's contrary to the clear intrinsic evidence or to, or to somehow try to undercut what the intrinsic evidence says. That's not what he said, and that's not what you urged him to say. I mean, you argued to him that, that you were arguing based on the old reading of Petronix, well after Phillips had already been decided, that it was absolute reversible error to even admit the evidence. No, I, I'm not sure we went that far, Your Honor. I think what we said was to the extent that they're trying to argue, urge you to use extrinsic evidence to reach a conclusion other than that dictated by the intrinsic evidence, that's reversible error certainly, and I think that's still correct. But, but no, I don't think it was reversible error for him to, to look at extrinsic evidence, and in fact he did. It's not, he didn't exclude extrinsic evidence, he looked at extrinsic evidence, he considered the, the Microsoft, the supposed Microsoft litigation positions, explained why that didn't help plaintiffs even if it was relevant. He looked at the dictionary definitions and, and said, you know, one of them clearly supported the construction he adopted, the other one was ambiguous, and, and he looked at the experts, and he said, not surprisingly, the experts disagree with one another. So that doesn't advance the ball. So I'm going to go with what the intrinsic evidence tells me. If the Court has no further questions. Any more questions for Mr. Trout? Thank you. Thank you. Mr., Mr. Lurie, and if you want to comment on the electrical connections, please do. Okay, thank you, Your Honor. Yeah, let me start there if I can. It's interesting how we got, how we got into this. Because we raised the idea that the term electrically connected should be construed because there was a wireless component to this. And to give you some history, initially Microsoft sold all their Xboxes as wired parts. The controllers were wired, the modems were wired, everything was wired. And that was the initial complaint that we filed. Later on, Microsoft came up with wireless. And we said, well, our, our claims ought to cover wireless as well. And so we had this issue about does electrically connected cover wireless. And Microsoft said, don't need to construe that. Electrically connected needs no construction. And this, this is Microsoft's response to our brief asking for construction. It's A12078. And they say, electrically connected is not a complicated term. And the 125 patent does not give it any special or technical meaning. If the term is to be construed, the court should give electrically connected its ordinary meaning, namely that whatever is being connected is connected in a way that allows for flow of electricity between the two things connected. That was their definition. If electricity flows between the two things, it's electrically connected. It's not the only time they said that. This is Mr. Cedaroth at a hearing the next day. We believe that, in fact, electrically connected is an everyday term. Not unlike, you know, you plug in your waffle iron into the wall. It's electrically connected and the current flows. We don't think that time needs to be spent on that term to tell the jury what they probably already know. Well, do you think that's inconsistent with their argument that, that what they mean is the current directly flows as opposed to indirectly flows? Absolutely. And then let me get to the last point because it informs us. They cite Phillips. In their brief, they cite Phillips to say that, in some cases, the ordinary meaning of claim language as understood by a person of ordinary skill in the art may be readily apparent even to lay judges. There's no question that a juror or a lay judge is not going to understand that when I plug an Xbox into the wall and turn it on, that there's no electrical connection. That's what Microsoft says. There's no electrical connection when I plug my Xbox into the wall and turn it on. No electricity flows, according to Microsoft. That's because there's a transformer in the power supply. But everybody, if you just asked them, lay judges, jurors would say, yeah, there's electricity flowing there. Of course there is. How else does it turn on? And you would have ended up going to trial like that if you hadn't decided to go for wireless, right? Well, you live and learn. That is our fault. I agree with that. We shouldn't have done that. But, on the other hand, in our view, the special master created a problem because he chose a dictionary definition to define the wireless issue that didn't even address the wireless issue. He had to change the definition in order to exclude the wireless. And that's where this induction came in and then the whole rigmarole about that. The other thing I need to say about that is when the special master went through the patent to find all the terms electrically connected, it's only used three times in the spec outside the claims. It's used in the title, in the abstract, and once in the specification, and not related to the claim language. But it's actually in the claim language. It is in the claim language. Immediately. And it has meaning. And we agree today that it excludes wireless. There's other related language as well, right? Connections and that term is used and going back to an electrical connection. Correct. And we agree that connected would include wireless or electrical, whereas electrically connected doesn't include wireless. We're not here to dispute that today. So there is a difference between the terms. We're running short of time. Do you want a quick rebuttal for the remaining minute? Please. Thank you. I need to address a couple of things. First of all, Microsoft says that when they argued that the microprocessor embodiment should be limited to filters and FDM, we said no. And the reason we said no is because Microsoft wanted to say that the microprocessor had to be only frequency division multiplexing filters. We said no, it's broader than that. That was our no. We didn't say that no, it can't encompass the flow chart or the block diagram of Figure 2. We said it's not limited to that very specific structure that is one example of Figure 2. So that was one point. And then I think a very important point on this equivalence problem is that I don't think you can fairly say we ever waived the equivalence. Microsoft did not file a motion for summary judgment in 2008. Microsoft filed leave to move for summary judgment because, as they said in their motion, the deadline for summary judgment motions is past. We need leave. And what the court referred to the special master was not a motion for summary judgment. It was a motion for leave to file summary judgment. And this is an A5846. This is the referral order by the judge. Before the court is Defendant Microsoft Corporation's April 22, 2008 motion for leave to file a partial summary judgment motion. The parties have consented to the court's referral. Pursuant to Federal Rule 53, the special master will conduct a hearing on defendant's motion. It wasn't about the summary judgment. Our response brief was three pages just saying aristocrat doesn't need to be considered because you already considered everything that aristocrat already says. But in the earlier motion you had argued for all the structure that you were contemplating, right? Yes. I'm talkingóI'm focused more on the equivalence issue right now, that we didn't waive equivalence as the district court found. But, yes, we did talk about that in our opening motions. We talked about it. In fact, WS Gaming was discussed and considered, and we just viewed aristocrat as another WS Gaming case. Right, and you just said aristocrat doesn't control. That's right. But there had been a whole record on summary judgment up until this point, wasn't there? There had been. And our point is if the court was going to actually get into the summary judgment merits, we should have been entitled to present additional evidence on those points. And the district court said, no, you don't get to present any additional evidence so spontaneously in granting summary judgment on a motion for leave. And that was an error because we had the record. We had a 2008 declaration that we would have filed. If the court had said, yeah, Microsoft, you have leave to file your motion for summary judgment, we would have answered the motion for summary judgment with evidence, including a 2008 declaration that goes through in very good detail all the steps of the claim in the aristocratic sense that we didn't get to present to the district court because it granted the motion for leave the same time it granted the motion for summary judgment without giving us an opportunity to be heard. Thank you. Okay. Thank you, Mr. Leary and Mr. Trella. The case is taken under submission.